UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONALD HASSEN,

    Plaintiff,

-vs-

CITY OF TAYLOR, DANIEL SHOOK,
BRADLEY SEPELL, JEFFREY SHEWCHUK,
MICHAEL CALDWELL, CITY OF DETROIT,
and MATTHEW HERNANDEZ,

    Defendants.

_____/

Case No. 06-13788

Judge Avern Cohn

# MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is a § 1983 case. Plaintiff Ronald Hassen ("Hassen") alleges that police officers beat him during a traffic stop and again during a subsequent detention at the Taylor Police Department lock-up. He brings suit against the City of Taylor ("Taylor") and several Taylor police officers in their individual capacities: Corporal Daniel Shook ("Shook"), Corporal Jeffrey Shewchuk ("Shewchuk"), Officer Bradley Sepell ("Sepell"), and Officer Michael Caldwell ("Caldwell"). Hassen also sues Officer Matthew Hernandez of the Detroit Police Department ("Hernandez"), who stopped to assist Shook during the traffic stop, and the City of Detroit ("Detroit"). Hassen claims that the defendants violated his rights under the Fourth Amendment and committed the state law torts of assault, battery, and gross negligence.

Before the Court is a motion for summary judgment brought by Taylor, Shook, Sepell, Shewchuk, and Caldwell. For the reasons that follow, the motion will be granted.

## I. Facts

### A. Background

On September 6, 2004, Hassen dropped off his children at his father's house in Chelsea, Michigan, and decided to stop at a bar on his way home. He reports that he drank at the bar for "at least a couple" of hours. Hassen cannot remember exactly how much he had to drink during this time, but he says that it was probably more than five beers as well as a number of shots of hard liquor. He finished drinking sometime in the late afternoon, at which time he got into his car and began to drive home. Hassen did not have a valid driver's license at the time; his license was suspended due to two previous convictions for drunk driving.

As Hassen left the bar, Shook was monitoring traffic on a nearby stretch of northbound I-75 in Taylor. After spotting a car exceeding the speed limit, he pulled into the left lane of the highway and activated his emergency lights. As he prepared to pull over the speeding car, Shook noticed Hassen's vehicle pass him in the center lane. Hassen's car swerved left and then right in a manner that suggested to Shook that the driver was drunk. Shook then activated his siren and attempted to pull Hassen over. Despite the siren and lights, Hassen continued to drive for some distance, then pulled his car over to the right shoulder of the highway.

## B. The Traffic Stop

### 1. Shook's Account

Hassen and Shook disagree about what happened next. According to Shook, Shook exited his police cruiser and approached Hassen's car. Hassen opened the door and started to get out of the car. Shook placed his hand on Hassen's shoulder and instructed him to remain in the car; Hassen complied. Shook then asked Hassen to hand him the keys to the car. Hassen refused and began to curse at Shook, so Shook reached into the car and took the keys out of Hassen's hand. Shook noticed a strong odor of alcohol on Hassen's breath. He then instructed Hassen to exit the car and walk back toward the patrol car. As he walked, Hassen looked unsteady on his feet. Hassen complied with a request to place his hands on the hood of the patrol car. Shook then sought to handcuff Hassen in order to pat him down for weapons; Hassen resisted, pulling his hands away and grappling with Shook. As Shook and Hassen struggled, Hernandez, an off-duty Detroit police officer, observed the situation, pulled his car over to the shoulder, and attempted to help Shook subdue Hassen. On Hernandez's suggestion, Shook and Hernandez grabbed Hassen and forced him to the ground; all three individuals fell down in the process. Shook then handcuffed Hassen and placed him in the back of the patrol car.

### 2. Hernandez's Account

Hernandez says that as he drove along an entrance ramp to northbound I-75, he saw Shook and Hassen on the right shoulder in the midst of a physical fight. Shook and Hassen were "pushing and pulling on each other," with Hassen pressing Shook's body

3

against the side of the patrol car. Hernandez approached the two men, identified himself as a Detroit police officer (he was off duty and wearing street clothes), grabbed Hassen around his waist and took him to the ground. Shook did not assist Hernandez in forcing Hassen to the ground, but fell as a result of the other two men falling. Hernandez then laid on top of Hassen to subdue him. Hassen was handcuffed at the scene, but Hernandez cannot recall whether he, Shook, or another officer who arrived later applied the handcuffs. Hernandez says that at the time he left the scene, he did not notice any injuries to Hassen.

### 3. Hassen's Account

Hassen's memory of the incident is somewhat different than Shook's. He says that, upon pulling his car over to the shoulder, he immediately exited the car and began walking back toward Shook's patrol car. Before he could reach the patrol car, Shook got out and pointed his gun at Hassen. Hassen cannot remember whether Shook said anything, but Hassen says that he raised his own hands in the air. Hassen says that the next thing he remembers, he was on the ground, handcuffed, with someone (he cannot say who) pressing a knee or foot down on the back of his neck. He also says that, at some point during the struggle, his head "slammed" into the side of the police car. Hassen cannot recall whether he resisted Shook's initial attempt to apply handcuffs, but he does not deny that this occurred.

## C. Transportation to the Jail

Ultimately Hassen was placed in Shook's patrol car and transported to the Taylor Police Department headquarters, where he was booked for drunk driving and resisting arrest. At the time he was booked, Hassen displayed scrapes on his face, left hand,

4

right elbow, and both knees, and a bruise on his right thigh. Hassen does not claim to have suffered any injury more serious than bruises and scrapes.

After Defendant Sepell read him his breath test rights, Hassen refused to take a Breathalyzer test. Accordingly, Defendant Caldwell prepared a warrant to draw blood. After a prosecutor and judge approved the warrant, Hassen was taken to a clinic and had blood drawn for a blood-alcohol test. Defendant Shewchuk assisted Shook in transporting Hassen to and from the clinic.

### D. Detention at the Jail

Hassen says that, at some point while he was being held at the Taylor lock-up, he was taken out of his cell and beaten by several police officers. He cannot identify any of the officers. Taylor has proffered video footage of Hassen at the lock-up, which does not show the alleged beating. The individual defendants all deny participating in or witnessing any beating of Hassen at the lock-up. Sepell says that his only contact with Hassen was to read him his chemical test rights before Hassen refused a Breathalyzer. Shewchuk says that his only contact with Hassen was to assist Shook in transporting him to and from the clinic where blood was drawn. Caldwell says that he had no personal contact with Hassen at all – he only prepared the warrant against Hassen for drunk driving. Shook says that he transported Hassen to the lock-up and to and from the health clinic, but never used force or witnessed another officer use force against Hassen after he was placed in the patrol car.

Hassen also says that officers took his clothes and placed him in a very cold cell, and that they refused his requests for a blanket and medical treatment.

### E. State Court Criminal Proceedings

5

Hassen's blood test showed that there were 0.19 grams of alcohol per 100 millileters of blood, placing him well over the legal limit prescribed in MCL § 257.625(1)(b) for operating a motor vehicle while intoxicated. Hassen pled guilty to criminal charges in state court. The record does not disclose the precise nature of the charges. Hassen says that was sentenced to a minimum of 18 months in prison as a result of his plea.

## II. Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in

6

summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### III. Analysis

### A. Section 1983

Claims of excessive force brought under 42 U.S.C. § 1983 are analyzed under the "objective reasonableness" standard of Fourth Amendment jurisprudence. Graham v. Conner, 490 U.S. 386, 394 (1989). Police officers have the right to use some degree of physical coercion to effect an arrest. Saucier v. Katz, 533 U.S. 194, 208 (2001).

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight....With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second

7

> judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (citations and internal quotation marks omitted). Application of the objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

"In order for any of the defendants to be held (liable) under [§ 1983], personal involvement must be shown." Bruner v. Dunaway, 684 F.2d 422, 425 (6th Cir. 1982). However, at least for police officers, "[a]cts of omission are actionable in this context to the same extent as are acts of commission"; that is, police officers may be held liable if a plaintiff is beaten in their presence and they fail to intervene. Id. at 426. "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997).

In order to make out a § 1983 claim against a municipality, a plaintiff must show (1) that plaintiff's harm was caused by a constitutional violation and (2) that the city is responsible for that violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992).

### 1. The Traffic Stop

Hassen's claim that his Fourth Amendment rights were violated during the traffic stop fails because the evidence, read in the light most favorable to Hassen, indicates that the force that the officers used to subdue him was reasonable. Because Shook and Hernandez's testimony that Hassen physically resisted arrest is uncontradicted – Hassen says that he cannot remember what happened during this part of the traffic stop – the Court must accept it as true. Physical resistance to an arrest is dangerous under any circumstances, but especially so in this case, as the resistance took place on the shoulder of a busy interstate highway. Either Hassen, Shook, or Hernandez could have inadvertently fallen into the highway as a result of Hassen's pushing and struggling with Shook, particularly as Hassen was drunk and unsteady on his feet. Hassen thus posed an immediate danger of serious physical injury or even death to the officers and himself. See Graham, 490 U.S. at 396.

Under the circumstances, Hassen's account of the force used against him, accepted as true for the purposes of this motion, does not provide a sufficient factual basis to allow any reasonable trier of fact to find that his Fourth Amendment rights were violated. Given the uncontradicted evidence of physical resistance, Shook and Hernandez were more than justified in forcing Hassen to the ground in order to protect Hassen's safety and their own. Likewise, it was reasonable to use a foot or knee to prevent Hassen from continuing to resist or accidentally stumbling into the road, even after he was handcuffed. Hassen sustained only superficial wounds and does not claim any lasting disability resulting from the force used during the traffic stop.

While it is unfortunate that Hassen sustained any injury, "to 'fine-tune' the situation...from the warm comfort of our chambers would undercut the *necessary*

element of judgment inherent in [the] attempt to control a volatile chain of events." Dunigan v. Noble, 390 F.3d 486, 496 (6th Cir. 2004) (emphasis in original). Judged from the perspective of a reasonable officer at the scene, Shook and Hernandez's actions did not violate Hassen's Fourth Amendment rights.

### 2. The Detention

Hassen next claims that he was beaten during his detention at the Taylor police lock-up. In addition to his own testimony on this point, Hassen points to Hernandez's statement that he did not notice any injuries to Hassen at the time he left the scene of the traffic stop. Hassen argues that a trier of fact might reasonably credit Hernandez's account instead of his own and conclude that he did not sustain any injuries during the traffic stop. If so, Hassen says that the fact that he was uninjured when he left the scene of the traffic stop supports the inference that he was beaten during his detention at the jail, since this is the only other plausible way in which he might have sustained the injuries shown in the record.

Viewing the evidence in the light most favorable to Hassen, his claims against the individual officers fail because he is unable to identify any individual who participated in or was present during the alleged beating. Shook, Sepell, Shewchuk, and Caldwell all deny participating in or witnessing any beating of Hassen at the jail. Hassen does not contradict any of this; he says only that officers whom he cannot identify beat him at some point during his detention. While it is conceivable that one or more of the individual defendants participated in or witnessed the alleged beating, Hassen proffers absolutely no evidence tending to show that this is true. Because it is necessary to show personal involvement in order to succeed on a § 1983 claim against

an individual, Bruner, 684 F.2d at 425, the Taylor police officers named as individual defendants are entitled to summary judgment.

Hassen also argues that Taylor should be held liable for the jailhouse beating due to a failure to adequately train or supervise its police officers. In support of this claim, Hassen notes that Taylor does not maintain a formal system of performance evaluation for its police officers after they complete an initial period of probation. Inadequacy of police training or supervision may serve as a basis for municipal liability only where the failure to train or supervise "amounts to a deliberate indifference to the rights of persons with whom police come in contact." City of Canton v. Harris, 489 U.S. 378, 392 (1989). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Fisher v. Harden, 398 F.3d 837, 849 (6th Cir. 2005). "[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." Stemler v. City of Florence, 125 F.3d 856, 865 (6th Cir. 1997).

Here, Hassen has failed to demonstrate that there is a genuine issue of material fact as to whether Taylor acted with deliberate indifference to the risk of a constitutional violation. The uncontradicted evidence shows that newly hired Taylor police officers are given four months of "field training" and then undergo a one-year probationary period, during which time they receive regular, formalized evaluations of their performance. Thereafter, shift supervisors review each daily police report that an officer submits. While at the jail, officers are monitored with a video recording system that covers many areas inside the jail and garage as well as an audio recording system in the booking

area.  Taylor also maintains an internal affairs bureau that investigates citizen complaints of officer misconduct and is empowered to discipline misbehaving officers.  Each officer is instructed to read a manual that includes, among other things, detailed policies on the permissible use of lethal and non-lethal force.  Hassen has not identified any reason to believe that the training and supervision was inadequate or any reason to believe that Taylor could have avoided the alleged misconduct by establishing a more formalized system of performance evaluation for its officers.

Hassen points to two prior incidents for which Caldwell was disciplined, but neither incident involved anything resembling a constitutional violation – on one occasion, Caldwell failed properly to secure a key to a patrol car, and on the other, his car was involved in an accident with another patrol car.  Hassen fails to identify any prior instances of misconduct by Taylor police officers similar to what is alleged here.  Because he cannot show that Taylor acted with deliberate indifference to the risk of excessive force or any other "constitutional tort," Taylor is entitled to summary judgment.

### B.  Assault and Battery

Hassen's claim for assault and battery fails because the officers' use of force was reasonably necessary to subdue Hassen, protect Hassen and themselves from the risk of greater injury or death, and effect Hassen's arrest.  To recover for assault, a plaintiff must demonstrate an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact."  Espinoza v. Thomas, 189 Mich.

12

App. 110, 119 (1991). Te recover for battery, a plaintiff must demonstrate a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." Id. However, "government actors may find it necessary – and are permitted – to act in ways that would, under different circumstances, subject them to liability for an intentional tort." VanVorous v. Burmeister, 262 Mich. App. 467, 483 (2004).

> It is well-settled in our state's jurisprudence that a police officer may use reasonable force when making an arrest. The force reasonably necessary to make an arrest is "the measure of necessary force that an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary. Thus, the standard is an objective one under the circumstances.

Id. at 480 (citations and internal quotation marks omitted). For the reasons stated above, the defendants' use of force at the traffic stop was objectively reasonable. Further, Hassen has proffered no evidence that would allow a reasonable jury to find that any of the individual defendants participated in or witnessed the alleged beating at the lock-up. Defendants' motion for summary judgment as to Hassen's assault and battery claim will therefore be granted.

### C. Gross Negligence

Hassen's claim for gross negligence is also without merit. "'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL § 691.1407(7)(a). Hassen's gross negligence claim apparently relates to the force used against him during the traffic stop and a failure to respond to his requests for medical care at the lock-up. For the reasons stated above, the force used against Hassen during the traffic stop was reasonably necessary to prevent more serious injuries. As to the denial of medical care, Hassen has not proffered evidence sufficient for a jury to find that the officers' alleged refusal to provide medical care was grossly negligent or resulted in any injury to Hassen. Rather, the uncontradicted evidence shows that Hassen's injuries were no more than minor scrapes and bruises that presented no risk of serious harm and that Hassen has not suffered any lasting injury or disability as a result of the alleged denial of medical care. Defendants are therefore entitled to summary judgment on Hassen's claim of gross negligence.

### V. Conclusion

For the reason stated above, the motion for summary judgment brought by City of Taylor, Shook, Sepell, Shewchuk, and Caldwell is GRANTED. As against these defendants, the case is DISMISSED.

SO ORDERED.

Dated: December 18, 2007      s/Avern Cohn  
                                                         AVERN COHN  
                                                         UNITED STATES DISTRICT JUDGE

**06-13788   Hassen v. City of City of Taylor, et al**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 18, 2007, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                        Case Manager, (313) 234-5160